Nov. Term,
1847.

GARNER
v.
THE STATE.

GARNER *v*. THE STATE.

In conformity with an act of 1846, a vote was taken in *Centre* township, *Marion* county, relative to the granting of licenses to retail spirituous liquors in that township, and the voters determined, by a large majority, against the granting of such licenses. The county commissioners were duly notified of said vote. *Held*, that the retailing of spirituous liquors afterwards in said township without license, was, under the act of 1843 on the subject, an indictable offence.

Thursday,
January 20,
1848.

ERROR to the *Marion* Circuit Court.

The transcript in this case shows, that, in conformity with the act of 1846 referred to in the opinion of the Court, a vote had been taken in *Centre* township, *Marion* county, and that the voters had thereby determined, by a large majority, against the granting of licenses to retail spirituous liquors in said township; and that the board of county commissioners had been duly notified of said vote previously to the retailing of spirituous liquors by the defendant as charged in the indictment.

PERKINS, J.—This was an indictment in the *Marion* Circuit Court against *Charles Garner* for retailing spirituous liquors without a license. Plea, not guilty; trial by the Court; conviction; and judgment that the defendant pay a fine of two dollars and the costs of prosecution, and stand committed, &c.

The indictment was found at the *October* term of the Court in 1846, and charges a selling on the first day of *October* of that year. The sale was in *Centre* township, in the county of *Marion*. The indictment was predicated upon the 93rd sect. of the R. S. 1843, p. 979, which enacts that every person not being licensed, &c., who shall sell any spirituous liquors, &c., shall be fined, &c.

The defendant admitted that he sold the liquor; and he

was, therefore, rightly fined under the above section of the general law, unless he showed some right of exemption from its operation. He admitted that he had no license to sell from the county commissioners, and, therefore, claimed no exemption from punishment on that ground; but he insisted that the penal section itself, upon which he was indicted, was, so far as related to the township in which the alleged selling took place, repealed by a provision of a local act of the legislature, approved *January*, 1846, which required the commissioners of *Marion* county to withhold license to retail from all persons in any township in said county, in which a majority of the voters at the *April* election, 1846, should not cast their ballots in favour of such license. This act does not in terms repeal the penal section in the R. S. on which the indictment was based. Does it, supposing it, for the sake of the argument in this case, to be valid, do so by necessary implication? Counsel insist that it does, because, they say, it prohibits the obtaining a license to retail, and to fine a man for selling without such a license when he is, by law, prohibited obtaining it, is a legal absurdity. We shall not find it necessary in this case to determine whether fining under such circumstances would, or would not, be lawful. The local act of 1846 seems not to us to go as far as counsel suppose it does. Let us examine it. It enacts, in substance, that the county commissioners of *Marion* county shall grant licenses to retail only in those townships in said county in which a majority of the voters shall, on the first *Monday* in *April*, declare in favour of such licenses. It adds, then, one to the conditions heretofore specified in the statutes upon which such licenses might be granted. Heretofore, the conditions have been, a petition or certificate from a certain number of freeholders of the township showing the necessity of such retailing therein, a certificate of the moral character of the applicant for the license, a bond, &c., and, sometimes, the non-existence of a remonstrance on the part of a majority of the freeholders, &c. The act under consideration, as we have seen, if valid, imposes the further condition of the vote of a majority of the electors at the *April* election. The act, then, does not prohibit the obtaining a license to retail. It authorizes a vote to be taken, the result of which may or may not prevent the ob-

tainment of license, but it is the vote under the law and not the law itself that produces, in the given case, the effect; for were the vote different, the license might, notwithstanding the law, be obtained. And even under this law, the county commissioners of *Marion* county now grant licenses to retailers in some of the townships in the county. The law, of itself, does not deprive them of the power to do so.

The question then arises, does a law imposing, with a view to the restraining of the traffic in spirits, such conditions upon the privilege of obtaining a license to retail, as may put it out of the power of any person to obtain such license, by implication, repeal all laws against retailing, and open the door to every one to practise the business with impunity?' If the power to control the business of selling spirituous liquors is possessed by the legislature, and that it is has not been denied in this case, we do not see how this question can be answered in the affirmative; and even if the legislature does not possess such power, that fact cannot affect the answer to the question. Has any one ever contended, that the law requiring the applicant to obtain the certificate of twelve freeholders of his township that a license to retail was demanded by the public interest before he could obtain it, repealed the penal section in question in those townships where no applicant could obtain such certificate, and consequently none could obtain such license? Where is the difference, in principle, between requiring the applicant to obtain the certificate of twelve freeholders, and requiring him to obtain the vote of a majority of the electors in favour of the license?

We think the local act of 1846 did not repeal the penal section in the R. S. against retailing.

We have been referred to the case of *Taylor* v. *The State*, 7 Blackf. 93. We do not think it in point. There, the statute, relied on in defence, expressly repealed so much of the penal section of the statute against vending certain kinds of merchandise, &c., as required a license to vend. There was no doubt as to what the legislature intended, at least, in that case. Here, the statute relied on in defence, as we have seen, does not expressly, nor, as we think, impliedly, repeal any provision of the statutes requiring a license to retail spirituous liquors, and there is no doubt that no such repeal was intended by the legislature.

Whether the law of 1846 is constitutional or not, is a question that does not arise in this case, and has not been considered. For, if unconstitutional, it could of course repeal no former law, and the defendant was liable for selling without a license pursuant to former laws; and if constitutional, it *does not* repeal former laws; and in either view, the judgment of the Court below must be affirmed.

*Per Curiam.*—The judgment is affirmed with costs.

*W. Quarles* and *D. Wallace*, for the plaintiff.

*J. L. Ketcham*, for the state.