THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* LEON HARRIS and Another, Defendants.

Supreme Court, New York County, June 25, 1928.

Crimes — perjury — defendants were charged before Supreme Court justice, sitting as committing magistrate, with crime of perjury in connection with testimony given by them in action for malpractice — action was predicated on alleged negligence of defendants in extraction of tooth — prima facie case established — since court was sitting as committing magistrate, it was not necessary to prove People's case beyond reasonable doubt — defendants held for grand jury — (Code Crim. Proc. § 208).

On this application to dismiss the complaint charging defendants with committing the crime of perjury in connection with their testimony given in the trial of a malpractice action, it appears that the action was based upon the alleged

negligence of defendants in the removal of a tooth and subsequent treatment of their patient. As against defendants' testimony before a Supreme Court justice sitting as a committing magistrate that they had nothing to do with the extraction of the tooth, the proof was so convincingly overwhelming that the court is impressed that the testimony of defendants was willfully and knowingly false, and warrants a finding that the People have established a *prima facie* case that the crime of perjury was committed.

Since the court sat only as a magistrate with committing jurisdiction, it was not necessary to prove the People's case beyond a reasonable doubt, and in view of the testimony in the civil trial and in this proceeding, and with section 208 of the Code of Criminal Procedure in mind, the defendants should be held for the action of the grand jury, and a motion to dismiss the complaint is denied.

MOTION to dismiss complaint charging defendants with perjury.

*Joab Banton, District Attorney* [*John J. McNaboe* of counsel], for the plaintiff.

*Goldstein & Goldstein* [*Jonah Goldstein* and *I. Maurice Wormser* of counsel], for the defendants.

COTILLO, J. The defendants above named were charged before me with committing the crime of perjury in connection with their giving testimony in the trial of the action wherein Bertha Chertok was plaintiff and Leon Harris and Joseph Effremoff were the defendants. The action was one instituted to recover for the malpractice of Harris and Effremoff in their treatment of Bertha Chertok. The trial of that action was held before me in Trial Term, Part XV, of the Supreme Court, New York county, the trial of the action starting February 20, 1928, and concluding February 28, 1928. At the end of the trial and after the jury had returned a verdict in favor of the plaintiff Bertha Chertok against the defendants in the sum of $20,000 the jury called upon me in my chambers adjoining the court room and urged that some action should be taken against the doctors because of the fact that it seemed apparent to them that the doctors willfully committed perjury in testifying to some of the material facts which were submitted to them for their deliberation.

Upon receiving this request from the jury I communicated with District Attorney Banton who assigned Assistant District Attorney John J. McNaboe. Mr. McNaboe drew a full complaint in perjury against both the doctors and the district attorney moved that I sit as a committing magistrate which I consented to do as I was familiar with all the facts in the case, and because I deemed it essential to justice in this county to comply with the request of the majority of the jurors. I then convened court and proceeded as a committing magistrate in Trial Term, Part V, of the Supreme Court, New York county, on March 5 and 6, 1928. At the

examination the People offered evidence against the two defendants charging them with the crime of perjury.

The two defendants entered a defense and at the end of the testimony moved to dismiss the complaint and to discharge the defendants, upon which motion decision was reserved.

The only question before the court now to decide is whether or not a *prima facie* case has been made out by the People, and in order to determine that fact it is necessary to consider whether a crime was committed in fact, and if there is reasonable ground and probable cause to hold the defendants for the commission of the crime of perjury.

It was stipulated by defendants' counsel that the record of the civil trial be also part of the record in this proceeding. Therefore, it will be advisable to discuss some of the evidence brought out at the civil trial to see whether it tends to prove a *prima facie* case of perjury against these two defendants.

The action was to recover damages alleged to have resulted from the malpractice of the two defendants. The defendant Effremoff held himself out to be a duly licensed dentist and testified that he had the advantage of a college education in Russia which gave to him the equivalent of our degree of a bachelor of science. He testified that he was a lecturer and a linguist, a man who had had advantages above the ordinary. The defendant Harris even more than the defendant Effremoff has had the advantage of a thorough and complete education. He is a physician and a dentist and he has further studied abroad. His education and experience are such that no possible excuse can be found for his testifying falsely under oath.

The basis of the plaintiff's claim in the malpractice suit was that the defendant Effremoff on the 23d day of June, 1925, extracted a tooth from the lower right jaw of Bertha Chertok. The jury was instructed that if they should find that the defendant Effremoff did not extract that tooth from the jaw of Miss Chertok their verdict must be against her and in favor of both defendants. Not only was that claim and that fact a material claim and fact in that litigation, but it was the most material fact in the case. It was the very foundation of the case. Despite the fact that Bertha Chertok and her sister Frances Chertok testified not only that the defendant Effremoff extracted that tooth, but told in detail the manner of the extraction, the defendant Effremoff under oath upon the stand stoutly denied that he had extracted that tooth. Indeed, he testified that no tooth was extracted by him from any part of the plaintiff's mouth and he testified that on June twenty-eighth at about ten o'clock in the morning there was no socket

in the plaintiff's right lower jaw indicating the recent extraction of a tooth. This testimony, if false, could not be the result of error. It was too vital in the suit which was instituted very soon after this time. If false it was knowingly false and the telling of it was a most deliberate misstatement of a material fact in the law suit under oath knowingly and willfully.

Six witnesses on the trial testified on behalf of the plaintiff to the contrary. The plaintiff, her sister, her mother and brother testified that when Bertha Chertok left for the office of Dr. Effremoff on the morning of June twenty-third she had every tooth in her mouth and that when she returned from his office on that morning there was but one tooth missing in her mouth, and that a tooth from her lower right jaw. Dr. Herman, a physician of high standing, whose testimony was sound and credible, a physician who had no interest in the litigation and no reason to testify falsely, testified that on Friday evening at six o'clock, June 26, 1925, when he attended Bertha Chertok at her home he found that a tooth had been recently extracted from the right side of her lower jaw and that two teeth had been extracted that same day from her left lower jaw.

Dr. Emanuel Kaplan, a witness called by the plaintiff, is an oral surgeon of some standing whose veracity was not impeached. He had no interest in this litigation. So little did he care to testify adversely to the defendants or to bring them to grief that he refused, while on the witness stand, to answer any hypothetical questions which might be propounded to him by plaintiff's counsel. Yet he testified that on Sunday, June twenty-eighth, at noon, he attended Bertha Chertok and found the right side of her face swollen and found that a right lower tooth, namely, the right lower first bicuspid, had been recently extracted from her mouth and that pus was oozing from the socket. Dr. Effremoff, as I have pointed out, testified that two hours before that time there was no socket in the right side of the plaintiff's lower jaw. Indeed, while being questioned by Mr. Schloss, counsel for Bertha Chertok, Dr. Effremoff himself forgot for a moment his claim that there was no socket in the plaintiff's right lower jaw. He was asked if when he examined Miss Chertok on Sunday, June twenty-eighth, the two left sockets were clean and he testified that they were. He was then asked if the right socket was pussy and he testified that there was some pus but he cleaned it out, and only after a remark by counsel did he remember to say there was no socket there. He had forgotten himself for a moment and in that unguarded moment had spoken truthfully.

The testimony that this tooth was extracted is so powerful and

convincing and overwhelming that I am impressed that the testimony of the defendant Effremoff that he did not extract that tooth and that that tooth was still in Bertha Chertok's mouth on Sunday, June twenty-eighth, was willfully and knowingly false.

In my opinion a *prima facie* case of perjury has been established against Dr. Effremoff.

The finding that the defendant Effremoff extracted a tooth from Bertha Chertok's right lower jaw on June 23, 1925, makes it necessary to find that the testimony of the defendant Harris, to the effect that when he examined the mouth of Bertha Chertok on June 26, 1925, he found that no tooth had been recently extracted from her mouth, is false. The positiveness of his testimony makes it appear that his testimony in that regard was knowingly and willfully false, and that he knowingly and willfully testified falsely to a material fact in that action under oath. That he did this with a view not only to the welfare of Dr. Effremoff, but with a view as well to his own welfare, is apparent from the fact that he, himself, testified that had he found this tooth extracted and had he found the swelling to exist in the right side of Bertha Chertok's face, which she testified existed at that time, he, himself, would have been guilty of malpractice in extracting two teeth in the lower left side of plaintiff's jaw and in doing nothing else.

I have spoken of false testimony in this trial as to only one fact, but, unfortunately, the testimony of the defendant Effremoff and the defendant Harris seems to be replete with other falsehoods.

Among other things, he testified that he saw Bertha Chertok and examined her in April, 1925, and found that there was missing from her lower jaw the right and left first molar teeth. He found that these teeth had not been recently extracted, so he testified. Yet we hear from Dr. Tanz, a dentist whose appearance and attitude upon the stand and whose manner of testifying was such that his word carried great weight, that he had examined Bertha Chertok's teeth in December, 1924, and had found every tooth in her mouth and all of them in perfect condition, so that although he had been visited in order that he might treat her teeth in any way he found necessary, he found need only for the cleaning and polishing of her teeth.

The defendant Effremoff testified that on June nineteenth, after a cursory examination of Bertha Chertok's mouth and at a time when he felt need for a thorough examination, and, therefore, without knowing what must necessarily be done for her by him, he contracted with her to treat her and do all necessary work for the sum of eighty-five dollars. He testified that the condition of Bertha Chertok was far more advanced than it was in April, 1925,

and that she had need for much more work but strangely enough this amount was the same amount which had been referred to by him in April. He testified that he made plaster casts of Bertha Chertok's upper and lower jaws and when asked to produce the cast of the upper jaw he testified that the model had been destroyed, admitting that if a cast were produced any dentist could tell whether or not it was a cast of Miss Chertok's teeth. He testified that on every occasion in June when Bertha Chertok visited his office she came alone and without her sister, while both the plaintiff, Bertha Chertok, and her sister testified that on every occasion when she visited Dr. Effremoff the two were together. That this was untrue was proved by an unconscious slip of the tongue when Dr. Effremoff, in an unguarded moment, in answer to a question propounded by his own lawyer testified he had called up Dr. Harris upon the telephone after *they* had left the office. Had but one person left his office it is hard to understand why he, in an unguarded moment, would refer to that one person as " they."

He further testified that, having sent his patient to Dr. Harris on Friday morning, June twenty-sixth, and having heard not a word from her on Friday afternoon, Friday night, Saturday afternoon and Saturday night and without calling her or being called by any member of her family, he carefully prepared a mouth wash, sterilized his instruments and placed them in a bag and went to her home between nine-thirty and ten o'clock on Saturday night, June twenty-seventh. He testified that he met there Dr. Herman. The testimony of Dr. Herman and other witnesses is clear and convincing that the only time that Dr. Effremoff was at the home of Bertha Chertok was on Saturday morning about ten o'clock and that at that time he came because he was called to come by Dr. Herman. Dr. Herman testified that Dr. Effremoff called Dr. Harris upon the telephone and spoke to him on that Saturday morning; and he further testified that he, himself, spoke to Dr. Harris at that time and made a definite appointment for two o'clock that afternoon at the home of the patient. Dr. Effremoff said definitely that that was not true and insisted that his incredible story of having wandered into the plaintiff's home between nine-thirty and ten o'clock at night, without calling or having been called, was true.

Dr. Harris showed the same disregard for the truth shown by Dr. Effremoff, although he attempted to be much more careful in covering his tracks. After having heard the slip made by Dr. Effremoff when he said " *They* left the office " to go to Dr. Harris' office, he testified that he did not know whether or not Bertha Chertok came alone or with someone. He did, however, testify

that Frances Chertok was not in the extraction room at the time he treated Bertha Chertok. Yet, Frances Chertok remembers well what happened during the extraction. He testified that Bertha Chertok, when she spoke to him after she had entered the office, told him that she had come to him for the extraction of teeth because he could administer gas and Dr. Effremoff did not have the facilities for that work. This is inconsistent, not only with the testimony of Bertha Chertok and her sister, but even with the testimony of his codefendant Dr. Effremoff. He testified that he advised Bertha Chertok to have a lateral X-ray taken of her jaw and that after he informed her it would cost ten dollars, and she would have to pay him for it, she refused to have the X-ray taken and told him to go ahead and extract the teeth without it.

He testified, as I have stated before, that he examined the girl's mouth carefully and that there was no socket in the right side of her lower jaw which indicated a recent extraction. He further testified that he was at his office all day on Saturday and received no telephone call concerning the Chertok case, although Dr. Herman and Frances Chertok both testified that they spoke to him on Saturday morning, June twenty-seventh.

He further gave the incredible testimony that after he had extracted two teeth from the mouth of Bertha Chertok she insisted upon the return of the X-ray which she had brought for him stating that it was hers since she had paid for it. This is particularly noteworthy since Dr. Effremoff and Dr. Harris both stated that the X-ray was taken of two left teeth; whereas, Bertha Chertok and her sister Frances testified that the X-ray was taken of the right jaw at the place from which the defendant Effremoff had extracted the right bicuspid tooth.

The X-ray plate was not produced, and in my opinion it was the most important record in the case. The chart or letter received by Dr. Harris from Miss Chertok containing instructions from Dr. Effremoff was not produced. Dr. Harris stated that these records, with the exception of the X-ray, had been destroyed. It is hard to believe that a man as careful to protect himself against law suits as Dr. Harris testified he was and is, would destroy such records or permit them to be lost while a law suit was actually pending.

While I am convinced of the falsehood of the testimony of both Dr. Effremoff and Dr. Harris, it is only fair to state that I am equally convinced that their counsel who ably represented them was entirely blameless in the matter, but that he was imposed upon by his clients.

The sanctity of an oath in my opinion is the very foundation

of the search for truth in a trial at law. On the very portals of this court house are engraved the words: " The True Administration of Justice is the Firmest Pillar of Good Government." What a weak pillar the administration of justice will become unless this vice of perjury is stamped out and measures are taken to punish those who come before a court contemptuous of its power and deliberately testify falsely to impose upon the court and jury.

The People have clearly established that the crime of perjury was committed. The defendants' defense in this proceeding consisted of their unequivocal persistence in their original testimony. No attempt was made to correct this testimony although at all times the law encourages a correction of testimony. Many gentlemen of prominence testified to their professional ability and reputation for honesty and veracity. The testimony of these character witnesses only impressed the court with a sense of the difference between what a man really is and what his devoted friends think he is. In determining whether a *prima facie* case has been established the court is only to determine two questions: Was a crime committed, and is there reasonable ground to believe the defendants guilty? This point to my mind has been clearly established, that is that the crime of perjury was committed, and as to the second point I believe that reasonable ground to believe the guilt of the defendants is sufficiently established. In this proceeding the court sits only as a magistrate with committing jurisdiction and it is not necessary to prove the People's case beyond the reasonable doubt. In the case of *People ex rel. Willett* v. *Quinn* (150 App. Div. 813, 827) Judge Burr, writing for the Appellate Division, said: " A committing magistrate is not required to exact the full measure of proof necessary to secure a conviction, but is obliged to hold one accused of crime for trial if there is reasonable ground to believe him guilty." (Citing *People ex rel. Fleischman* v. *Fox*, 34 Misc. 82; *People* v. *Steinhardt*, 47 id. 252, 263; *Matter of Paul*, 94 N. Y. 497, 503.)

The Code of Criminal Procedure (§ 208) provides that a defendant must be committed if it appears from the preliminary examination " that a crime has been committed, and that there is sufficient cause to believe the defendant guilty thereof."

In view of the testimony in the civil trial and in this proceeding, and in view of section 208, I am of the opinion that Effremoff and Harris should be held for the action of the grand jury, and the motion for the dismissal of the complaint and discharge of the defendants is denied.