## McPHERSON *v.* THE STATE OF INDIANA.

[No. 21,453.    Filed December 16, 1909.    Rehearing denied April 1, 1910.]

1.   CONSTITUTIONAL LAW.—*Statutes.*—*Presumptions.*—The presumption is that the legislature in enacting a statute followed the Constitution; and to overthrow a statute, it must be clearly shown that the Constitution has been violated. p. 62.

2.   INTOXICATING LIQUORS.— *Sales.*— *Restriction.*— *Statutes.*— Statutes to regulate, restrict and control the sale of intoxicating liquors, import a continuance of the sale thereof. p. 64.

3.   CONSTITUTIONAL LAW.—*Intoxicating   Liquors.*—*Restrictions.*— *County Local Option.*—*Statutes.*—*Title.*—The title to the county local option law (Acts 1908 [s. s.] p. 4) in form: "An act to better regulate, restrict and control the sale of intoxicating liquors and providing for local option elections," is not in violation of article 4, §19 of the Constitution, providing that the subject-matter of a statute shall be expressed in its title, on the ground that the purpose of such law is really to prohibit the sale of liquor and not to "regulate, restrict and control" such sale. Jordan and Montgomery, JJ., dissent. pp. 64, 69.

4. INTOXICATING LIQUORS.— "*Prohibition.*"— "Prohibition" imports the forbidding by law of the manufacture and sale of intoxicating liquor.  p. 68.

5. STATUTES.—*Theory of.—Public Welfare.*—The theory in the enactment of laws is the principle of the greatest good to the greatest number, and to this end a majority is required to enact a statute.  p. 70.

6. CONSTITUTIONAL LAW.—*Statutes.—Exercise of Rights under.*— The legislature may pass laws the exercise of which may depend upon future events or contingencies.  p. 71.

7. CONSTITUTIONAL LAW.—*County Local Option.—Enactment of.— Execution.*—The legislature in the passage of the county local option law (Acts 1908 [s. s.] p. 4) gave the voters no part in making the law, but did authorize them to assist in its enforcement.  p. 72.

8. CONSTITUTIONAL LAW.—*County Local Option.—Taking Effect of. —Suspension of Laws.*—The county local option law (Acts 1908 [s. s.] p  4) is not in violation of article 1, §25, of the Constitution, providing that no law shall be passed to take effect upon any other authority than that provided in the Constitution, nor is it in violation of article 1, §26, providing that the operation of laws shall never be suspended, except by authority of the General Assembly.  *Maize v. State,* 4 Ind. 342, overruled.  Jordan and Montgomery, JJ., dissent.  p. 73.

From Hamilton Circuit Court; *Ira W. Christian,* Judge.

Prosecution by The State of Indiana against George McPherson.  From a judgment of conviction, defendant appeals.  *Affirmed.*

*Shirts & Fertig* and *Ferdinand Winter,* for appellant.

*James Bingham,* Attorney-General, *A. G. Cavins, E. M. White, W. H. Thompson, R. C. Minton* and *Hanly, McAdams & Artman,* for the State.

HADLEY, C. J.—On January 26, 1909, an election was held in Hamilton county, under the act of September 26, 1908 (Acts 1908 [s. s.] p. 4), commonly called the county option law, at which election a majority of the votes cast was in favor of prohibiting the sale of intoxicating liquors as a beverage in said county, as contemplated by said act.

Before said election, to wit, on December 8, 1908, the board of commissioners of said county, acting under exist-

ing state laws, granted appellant a license to sell such liquors at retail for the term of one year from said date.

Subsequent to ninety days after said election, to wit, in April, 1909, and within the year of said license, appellant sold one gill of whisky to John Carey, claiming the right to make the sale under his said license, notwithstanding the result of said election. He was convicted for making an unlawful sale, and fined $20 and costs, from which judgment he appeals.

Appellant's motion to quash the affidavit, on the ground that it does not state a public offense, was overruled, as was also his motion for a new trial, on the ground that the decision was contrary to law and was not sustained by sufficient evidence, which rulings are assigned as error, and give rise to the only question presented, to wit: Is the county option law constitutional?

Appellant first insists that said act contravenes article 4, §19, of the state Constitution, which provides: "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." The point urged by appellant is that the subject of the act is prohibition, which is not expressed in the title.

In considering whether a legislative enactment is in conflict with the Constitution, some fundamental principles must be kept in view. Due regard for other departments of the state government must be maintained.

1. The principle that forbids one branch of the state government from encroaching upon the duties and powers of another gives rise to the salutary legal rule which requires us to presume that any act of the legislative or the executive departments is performed in the proper exercise of authority conferred by the Constitution. Confronted by this presumption, he who would strike down an act of the legislature as unauthorized by the fundamental law must make its invalidity appear with such clearness and certainty as to remove all reasonable doubt. Concerning this

subject, it was said in the case of *State* v. *Gerhardt* (1896), 145 Ind. 439, 451, 33 L. R. A. 313: ''An act of the legislature comes to us as the will of the sovereign power. In the first instance the members of that body must be deemed to be the judges of their own constitutional authority. The State's executive and each member of its General Assembly take an oath to support the Constitution, both federal and state, and as these can only be supported by obeying and enforcing their provisions, we must presume that these duties were discharged by our lawmakers in the passage of the particular act in question, and by the Governor when he officially gave to it his sanction and approval. For these reasons, and others, all presumptions as to its validity must be indulged in its favor, and it is only when made to appear clearly, palpably, and plainly, and in such a manner as to leave no reasonable doubt or hesitation in our minds, that a statute violates some provision of the Constitution that we can consistently declare it void.''

Justice Waite said, in *Sinking Fund Cases* (1878), 99 U. S. 700, 718, 25 L. Ed. 496: ''Every possible presumption is in favor of the validity of the statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule.'' See *State, ex rel.,* v. *Fox* (1902), 158 Ind. 126, 56 L. R. A. 893; *Isenhour* v. *State* (1901), 157 Ind. 517, 87 Am. St. 228; *Gustavel* v. *State* (1899), 153 Ind. 613.

The title of the act in question is as follows:

''An act to better regulate, restrict and control the sale of intoxicating liquors and providing for local option elections.''

It is agreed that the purpose expressed in the title is better to regulate, restrict and control the liquor traffic. The contention is over the subject contained in the body of the act,

which is affirmed by appellant to be unqualified prohibition, and by the Attorney-General to be that which is clearly and accurately expressed in the title, namely, better to regulate, restrict and control the sale of such liquors.

It is readily seen that there is a marked difference in the two contentions. To regulate, restrict and control the sale implies that the sale shall go on within the bounds

2. of certain prescribed rules, restrictions and limitations. *Sweet* v. *City of Wabash* (1872), 41 Ind. 7; *Duckwall* v. *City of New Albany* (1865), 25 Ind. 283; *Loeb* v. *City of Attica* (1882), 82 Ind. 175, 42 Am. Rep. 494. Prohibition, as applied to the liquor traffic, implies putting a stop to its sale as a beverage; to end it fully, completely and indefinitely.

So, if the purpose of the act in question is to authorize the exercise of unqualified prohibitory power, as usually understood by the term, the act is void because its

3. subject is not expressed in the title. Is the object and purpose of the statute—in other words, its subject—the better and further regulation of the traffic, or the prohibition thereof? Because the enactment contains the words "prohibit," "prohibited" and "prohibiting" fifteen times, as averred, it is not conclusive that it is a prohibitory statute. In no instance is the word employed to define or qualify the object and purpose of the law, nor does it go further than to qualify some act or procedure. A statute often speaks as plainly by inference and by means of the purpose which underlies it as in any other manner.

In arriving at the true purpose of the act, it may be useful to glance at the history of such legislation in this State. From the organization of the state government to the present, except for a brief period, the sale of intoxicating liquors, under license and some kind of restriction, has been recognized as lawful. The first act under the new Constitution (Acts 1853 p. 87) was entitled: "An act to

regulate the retailing of spirituous liquors, and for the suppression of evils arising therefrom.'' It was a township local option law, providing that no license should issue, except upon the consent of a majority of the legal voters expressed upon the ballots at the April election. This act, while the principle pertaining to the effect of a vote was radically different from the statute before us, and while it continued for an indefinite period to prohibit the sale in all counties not voting in favor of license, and regulated and restricted sales under license, so far as appears, was never assailed or claimed to be a prohibitory law.

A licensed seller was fined for sales on Sunday and for keeping a disorderly house; he was required to care for any one made drunk, until he was able to return to his family, and, in default, was liable to another who should do so. It also made the seller liable, on his bond, to the wife, parent or child for all damage from sales of liquor.

Two years later, to wit, in 1855 (Acts 1855 p. 209), the law of 1853, *supra*, was repealed, and all licenses issued thereunder were declared void, and in its stead was passed a veritable prohibitory law, entitled ''An act to *prohibit* the manufacture and sale of spirituous and intoxicating liquors, except in the cases therein named, and to repeal all former acts inconsistent therewith, and for the suppression of intemperance.'' Severe penalties were provided for the manufacture and sale of liquors, except that the county commissioners might permit the manufacture, and sale to authorized county agents, to be by them sold only for medicinal, mechanical and scientific purposes. As an evidence that the legislature had clearly in mind the distinction between the terms ''prohibition'' and ''regulation,'' we find in the act of 1855, *supra*, no such temporizing words as ''regulate and restrict.''

In 1858 (Acts 1858 p. 40) the prohibitory law of 1855, *supra*, was unconditionally repealed, and in 1859 (Acts

Vol. 174—5

1859 p. 202) a return was made to the policy of regulation, and an act "to regulate and license" was enacted. The regulation provided in this latter act consisted of penalties for sales on Sunday, on election days, to persons intoxicated, to minors, and for keeping a disorderly house.

Unimportant acts were passed in 1859 and in 1865, and in 1873 (Acts 1873 p. 151) another act, known as the Baxter law, "to regulate the sale of intoxicating liquors," and repealing all former conflicting laws, was enacted. This provided for ward and township local option, to the effect that a license could be granted only upon a petition signed by the applicant and a majority of the legal voters of the ward or township. It also provided penalties for sales generally denounced in the former statutes, and, in addition thereto, for sales to persons in the habit of getting intoxicated, for sales made on any day between 9 o'clock p. m. and 6 o'clock a. m., for sales on any public holiday or election day, for becoming intoxicated, and contained many other radical provisions. The severity and sweep of the Baxter law went beyond what the people were prepared to approve, and having found prohibition inexpedient in 1855, the legislature at its next ensuing session, to wit, in 1875 (Acts 1875 [s. s.] p. 55), repealed the Baxter law, and substituted therefor another act to "regulate and license," and thus it may be said to have returned a second time to a system of conservative regulation as the most successful in suppressing the evils of intemperance.

The law of 1875, in its amended form, is still in force, and had been the embodiment of our legislative policy with respect to the liquor traffic for thirty years when the act in question was up for consideration. By adopting the title, "To better regulate, restrict and control"—in substance the same as all preceding titles, except that of 1855 —it will be presumed that the legislative body intended that the law in question should be administered along the same

lines, and with the same object in view, as the laws under similar titles had been previously administered.

This presumption is strengthened by the act of 1895 (Acts 1895 p. 248), known as the Nicholson law, it being an act "to better regulate and restrict the sale," etc., which, while an original act, is clearly supplemental to and in aid of the act of 1875, and its amendments. The new and additional means of regulation provided by the Nicholson law consist clearly in requiring more publicity and exposure of the selling place, forbidding the loitering about or going into saloons during hours when sales are unlawful, and providing for a denial of a license to any applicant for two years upon the remonstrance of a majority of the legal voters of the ward or township.

In 1905 (Acts 1905 p. 7, §8332 Burns 1908), by the Moore amendment, the remonstrance feature of the Nicholson law was changed so as to allow a general, or blanket, remonstrance against all applicants, to be effective for the space of two years.

The act before us, like the Nicholson law, is plainly supplemental to and in support of the regulative and restrictive spirit of the act of 1875, supra, the only substantial difference in the acts being that the latter supplies a new and additional limitation upon the power of the county commissioners to grant a license. At most, the difference is only a matter of degree. The latter enlarges the acting district, and changes the mode of taking an expression of the voters, and beyond this we are unable to perceive anything of substance different from the Nicholson law, or that tends to support the contention that the subject of the act is prohibition. The title of the Nicholson law, in all material respects like that of the act of 1908, being to "better regulate and restrict," has been upheld by this court as sanctioned by the constitutional provisions here invoked. State v. Gerhardt, supra; Shea v. City of Muncie (1897), 148 Ind. 14; Cain v. Allen (1907), 168 Ind. 8.

It was said in the case of *State* v. *Gerhardt, supra,* p. 459: "The subject is clearly expressed in the title. The latter fully indicates the purpose of the legislation, and informs all persons as to the provisions of the act. The matters embraced in the body of this statute are details of the method by which the sale of intoxicating liquors is to be 'better regulated and restricted.' All of them, it appears to us, are germane to the subject, and appropriately and properly connected therewith."

The act before us is one of either regulation or prohibition. It cannot be both, and avoid being double, which no one claims. It is a bundle of provisions, in the enforcement of which every county in the State may retain its saloons and continue the sale of intoxicating liquors as a beverage; and some counties that are now "wet" may become "dry," and some that are now "dry" may become "wet," according to the sentiment of the electors, at the end of any period of two years. Shall we call this regulation or prohibition? Will any one dare to say that if the title had been "An act to prohibit the sale of intoxicating liquors," it would have been sufficient to make a valid law? A concession that it would not is equivalent to an admission that the controverted title is good.

Furthermore, the word "prohibition" is akin to "regulate, restrict and control." Its use in the body of the act is of little significance. To forbid the sale of liquor by those who have no license, to deny the licensee the right to sell on certain days, between certain hours, in certain places, in certain quantities, is, to some extent at least, qualified prohibition. It is prevention, interdiction. Such laws, however, are unquestionably regulations and restrictions of the liquor traffic. They operate as a check, or restraint, upon the sale, not as an absolute inhibition, and are in the strictest sense regulations. They regulate by prohibiting the sale at certain times, to certain persons, and in certain places. Besides, to say the law "prohibits" the citizen

from selling without a license, or that the law "prohibits" the licensed seller from selling on Sunday, is etymologically correct. In fact, the word was employed in this sense by the legislature in framing section four of the Nicholson law (§8327 Burns 1908, Acts 1895 p. 248), which provides that obstructions to the street view shall not be set up in the selling room "during such days and hours when the sales of such liquors are *prohibited* by law." So it is not so much the primary meaning of the word as the sense in which it is popularly understood, as applied to the manufacture and sale of spirituous liquors, that must control.

Following are a few definitions of "prohibition" as specifically applied: "Interdiction of the liberty of making and of selling, or giving away, intoxicating liquors for other than medicinal, scientific and religious purposes." Anderson's Law Dict. And see Bouvier's Law Dict. (Rawle's ed.). "The forbidding by law of the manufacture and sale of alcoholic liquors." English's Law Dict. "The forbidding by law of the sale of alcoholic liquors as beverages." Webster's Int. Dict. "The forbidding by legislative enactment of the manufacture and sale of alcoholic liquors for use as beverages." Standard Dict. The term has even a wider sweep than this. A prohibitory law to be classed as such must, at the same instant, in the same way, become effective to interdict the sale of liquors throughout all parts of the jurisdiction of the lawmaking power. *Welsh* v. *State* (1890), 126 Ind. 71, 77, 9 L. R. A. 664; *Shea* v. *City of Muncie, supra; State, ex rel.,* v. *Judge, etc.* (1888), 50 N. J. L. 585, 15 Atl. 272, 1 L. R. A. 86.

It seems absurd, because rationally inconceivable, that under the operation of a general prohibitory statute enacted by the General Assembly sales as a beverage may indefinitely continue to be lawfully made in many counties of the State. It is also equally incomprehensible how a law may be absolutely prohibitory, and in itself provide the means and terms under which sales may be con-

tinued or resumed in any or all counties of the State. We are unable to perceive any distinction between the prohibition which results from remonstrance under former laws, which has uniformly been held to be regulation, and the prohibition arising under the act in question, with the sole exception as to the duration of the term of restriction, depending upon petition and election at the expiration of each biennial period.

We, therefore, conclude that the object and purpose of the act before us is the regulation, and not the prohibition, of the liquor traffic, and that the subject is fairly deducible from the title and not in conflict with article 4, §19, of the Constitution. *Isenhour* v. *State* (1901), 157 Ind. 517, 87 Am. St. 228; *Gustavel* v. *State* (1899), 153 Ind. 613; *Burget* v. *Merritt* (1900), 155 Ind. 143; *Clarke* v. *Darr* (1901), 156 Ind. 692; *Republic Iron, etc., Co.* v. *State* (1903), 160 Ind. 379, 62 L. R. A. 136; *Maule Coal Co.* v. *Partenheimer* (1900), 155 Ind. 100.

The second contention is that the act is in derogation of article 4, §1, of the state Constitution, which provides: "The legislative authority of the State shall be vested in the General Assembly, which shall consist of a senate and house of representatives," the point made being that the act, as relating to the vote of the county, is an attempt to confer legislative power on the people.

We do not so regard it. Beneath all our laws lies the principle of the greatest good to the greatest number, and the means to this end are generally ascertained by the majority voice, as expressed, through representatives in the General Assembly, in the form of laws. The benefit of laws thus adopted for the public welfare is bestowed upon all the people at the same time and in the same manner, but the right to appropriate and enjoy such benefits is sometimes made to depend on a condition or contingency. It is a matter of common knowledge that conditions are varying, and not always the same in all counties

of the State, and particularly is this true as to sumptuary legislation. A law that is acceptable and salutary in some counties may be odious and impolitic in others; impolitic in that odious laws tend to develop in the people resistance of, and disrespect for, all legal restraint. It is safe to say that no law will be stricken down simply because it was passed in deference to public sentiment. We may go farther, and add that it has been abundantly demonstrated that a prohibitory or stringent temperance law cannot be successfully enforced in a community where it is opposed by a majority of the voters. These truths the lawmakers knew, and they had, within the limits of the Constitution, the undoubted right so to shape legislation as seemed to them best calculated to invoke the earnest support of the greatest number of electors.

It has always been conceded that the legislature has constitutional authority to pass laws to be exercised upon the happening of a future event or contingency. Statutes providing for the construction of highways, drains, public buildings, railroads, and the like, upon petition and vote of electors, belong to this class.

But everything essential to the completion of the law, and to its inherent, effective force as law among the people, must emanate from the General Assembly and other constitutional authorities. It is, however, unquestionably competent for the legislature to designate a part, or all, of the people of a political subdivision, or district, to make manifest, by signature or vote, a condition or contingency that may or may not call a law into exercise. It may properly be a part of the legislative scheme. A law for the construction of ditches, and for opening, improving or vacating highways, etc., lies dormant until a specific number of inhabitants invoke its application or enforcement to some proposition for the construction or abandonment of a ditch or highway.

The legislature in this act has not attempted to give the

voters power or authority to assist in making the law. It has given them only the power to assist in its exe-

7. cution. In taking a vote, the electors of the county are not giving effect to the law, or exercising legislative power; they are only participating in the execution or administration of the law. As the contingency for an exercise of authority to construct a court-house, a ditch or a highway may be a certain number of petitioners, so may a majority vote of a county be the contingency to call into activity and operation the prohibitory features of the county option statute. The people by voting for or against prohibition add nothing to the law and take nothing from it. It is the law that authorizes the vote, and the law that declares what the result of the election shall be. All the vote can accomplish is to disclose a local condition, namely, whether it is expedient to prohibit the sale of intoxicating liquors as a beverage in the voting district. The voters have nothing to do even with the expediency of the law. The legislature has rightfully determined that, by providing in the act that sales as a beverage shall not be peremptorily denied in counties wherein a majority of the electors express themselves as favorable to such sales, and that such sales shall be denied in counties where a majority express themselves as favorable to its exclusion. So it is seen that if a majority vote against the sale of liquor, it is the legislature, and not the voters, that declares it shall not be sold. The vote springs from the law, and not the law from the vote. The principle is in perfect accord with our institutions. It has behind it the popular sympathy and support of the people, and a sound public policy.

Many adjudications of this question have been had in the several states of the Union, and while there appears some divergence in the views expressed, the better reason and clear weight of authority are unquestionably in support of the views here expressed. We hold that the act is not repugnant to article 4, §1, of the Constitution. *Groesch* v. *State*

(1873), 42 Ind. 547; *State* v. *Gerhardt, supra; Boomershine* v. *Uline* (1902), 159 Ind. 500. For instructive cases from other jurisdictions, see *Stevens* v. *State* (1900), 61 Ohio St. 957, 56 N. E. 478; *Gordon* v. *State* (1889), 46 Ohio St. 607, 23 N. E. 63, 6 L. R. A. 749; *State* v. *Cooke* (1877), 24 Minn. 247, 31 Am. Rep. 344; *State, ex rel.,* v. *Forkner* (1895), 94 Iowa 1, 62 N. W. 772; *Locke's Appeal* (1873), 72 Pa. St. 491, 13 Am. Rep. 716; *Commonwealth* v. *Dean* (1872), 110 Mass. 357; *People* v. *McBride* (1908), 234 Ill. 146, 84 N. E. 865; *State, ex rel.,* v. *Judge, etc.* (1888), 50 N. J. L. 585, 15 Atl. 272, 1 L. R. A. 86; *Ex parte Handler* (1903), 176 Mo. 383, 75 S. W. 920; *Gloversville* v. *Howell* (1877), 70 N. Y. 287; *Fouts* v. *Hood River* (1905), 46 Ore. 492, 81 Pac. 370, 1 L. R. A. (N. S.) 483; *Thalheimer* v. *Board, etc.* (1908), 11 Ariz. 430, 94 Pac. 1129

It is further alleged that the act is in violation of article 1, §25 of the Constitution, which, in substance, declares that no law shall be passed to take effect upon any 8. other authority than that provided in the Constitution, in that said statute is made to take effect in each or any county of the State upon the voluntary, favorable majority vote of the people of such county; and that the act is condemned by article 1, §26, of the Constitution, which provides: "The operation of the laws shall never be suspended, except by authority of the General Assembly," the point made on the latter proposition being that the effect of the statute is to empower the electors of a county to suspend the operation of the license act of 1875 (Acts 1875 [s. s.] p. 55) by a majority vote.

To begin with, we concede that the giving of effect to an act of the legislature, and also the suspension of the operation of a statute, involve the exercise of legislative power; hence, cannot be accomplished by any other body or person. But there is no ground for such contention here. The favorable majority vote of a county has nothing to do in giving effect, validity or power to the law. It is the passage

of an act by both houses of the General Assembly by a constitutional majority, its verification by the signature of the presiding officer of each house, its approval by the Governor, its publication and delivery to each county of the State, and the Governor's proclamation thereof, that give to it the force and effect of law. And when these constitutional processes have been observed, *eo instante*, with the performance of the last act, the legislative proposition becomes fully habilitated and endowed as a law of the State, and exists in full force and effect in every nook and corner of the State. For want of a subject to operate upon, it may rest quiescent for an indefinite period; but it is constantly present in every part of the State, ready to be invoked for the purposes of its enactment.

Hendricks county has never removed, nor attempted to remove its county seat. Does this prove there has been no complete law in the county for the removal of county seats for the seventy-five years of its existence? Is any one brave enough to contend that a favorable majority vote of the county was all these years necessary to the finishing, by giving effect, to a removal law? Is it not more consistent and rational to say that the law was there all the time, complete and in full force and vigor, but awaiting the favorable majority vote as the contingency, determined, fixed, and written in the law of the legislature, as constituting the basis and terms of removal authority?

So, as in the illustrative case, in the statute before us, the vote provided for in no way affects the inherent force and virtue of the law. It only exhibits a social condition or contingency, that, in the judgment of the General Assembly, makes it expedient to prohibit, or permit, sales at retail under restrictions, as the case may be, in accordance with the wishes of the majority. The policy of the legislature is sound and salutary, and it would be unfortunate if the law could not yield its support.

The same reasoning applies to the last point, that a favor-

able majority vote of the county suspends the operation of the act of 1875, *supra*. It is the legislative decree, and not the vote, that suspends said act of 1875. See authorities last cited.

We cannot accept the case of *Maize* v. *State* (1853), 4 Ind. 342, and some other early cases following it, as authority in this case. Said case was based on the act of March 4, 1853 (Acts 1853 p. 87), which provided in section one "that no person shall retail spirituous liquors * * * without the consent of a majority of the legal voters of the proper township who may cast their votes for license at the April election," and giving bond. A license thus voted should continue for one year, and then expire, if not renewed by another majority vote at the next April election. It prohibited the charging or collecting of any license fee. A favorable vote for license in any township made it the duty of the county auditor to issue a retail license "to any person" who should file a bond, without any reference to sex or character, or fitness of the applicant to be entrusted with a license. All other laws on the subject of retailing intoxicating liquors previously passed were repealed.

We think the act of 1908 is distinguishable from the act of 1853, but this is unimportant, as the case of *Maize* v. *State, supra,* was clearly discredited, if not in effect overruled, by this court in the case of *Groesch* v. *State, supra,* in considering the constitutionality of the Baxter law.

It is said in the case last cited, at page 558: "It may be remarked, however, that there are several cases * * * where legislation similar to the statute of 1853, which was in question in the Maize case, has been held to be constitutional and valid." But whether the case of *Maize* v. *State, supra,* is or is not distinguishable or overruled, we unhesitatingly adhere to the view announced in the case of *Groesch* v. *State, supra,* and reaffirmed in the case of *State* v. *Gerhardt* (1896), 145 Ind. 439, 33 L. R. A. 313.

We conclude that the act in question is not subject to any

of the constitutional objections urged against it, and the judgment is affirmed.

Jordan and Montgomery, JJ., dissent.

## DISSENTING OPINION.

MONTGOMERY and JORDAN, JJ.—We are constrained to dissent from the prevailing opinion upon two points: (1) The subject of the legislation is not, as the court affirms, expressed in its title, as required by article 4, §19, of the state Constitution, which declares that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title such act shall be void only as to so much thereof as shall not be expressed in the title." (2) The act, under its provisions, violates article 1, §26, of our Constitution, which declares that "the operation of the laws shall never be suspended, except by authority of the General Assembly."

When a court is called on to determine whether the title of an act responds to the requirements of the Constitution, its first duty is to scrutinize closely the provisions of the act in controversy, in order to ascertain if they disclose the subject of the legislation and if such subject is expressed in its title. As said by Judge Cooley: "The legislature may make the title of an act as restrictive as they please. * * * The courts cannot enlarge the scope of the title; they are vested with no dispensing power; the Constitution has made the title the conclusive index to the legislative intent as to what shall have operation." Cooley, Const. Lim. (7th ed.) 212.

The act in question (Acts 1908 [s. s.] p. 4) is entitled: "An act to better regulate, restrict and control the sale of intoxicating liquors and providing for local option elections." This latter phrase may be eliminated, as it lends

no force to the title, and if deserving of any regard, it must be as a matter of detail by which the sale of intoxicating liquors is to be regulated. That the subject of the legislation proposed is better to regulate the sale of intoxicating liquors is beyond dispute. The title, by the employment, in addition to the term "regulate," of the terms "restrict" and "control," may be said to be open to the criticism that it is tautological, for these terms, when properly interpreted, mean to "regulate," and consequently they do not enlarge the scope of the word "regulate," immediately preceding them in the title.

No one by reading this title would expect to find thereunder legislation other than that which would be to regulate the sale of intoxicating liquors as a beverage. The title does not give even a hint that the legislation proposed to be enacted thereunder is to prohibit instead of to regulate the sale of intoxicating liquors. In order successfully to meet the assault which is made against the act, that its subject is not expressed in the title, it will not do to assert that the subject thereof is not to prohibit the sale of intoxicating liquors, but, in order to uphold it and make it respond to or meet its title, the court must go further and be able consistently to affirm that its subject, as disclosed by its terms and provisions, is to regulate the sale of intoxicating liquors, otherwise the statute must be condemned, for the reason that the subject thereof is not expressed in the title, as required by the mandate of the Constitution.

At the beginning of the majority opinion, the court states that "on January 26, 1909, an election was held in Hamilton county, under the act of September 26, 1908 (Acts 1908 [s. s.] p. 4), commonly called the 'county option law,' at which election a majority of the votes cast were in favor of prohibiting the sale of intoxicating liquors as a beverage in said county as *contemplated by said act.*" (Our italics.) If, as the court states in its opinion, the majority of the electors of Hamilton county voted to prohibit the sale of in-

toxicating liquors as contemplated by the act, then evidently, on the court's own interpretation, it must be true that this statute under this provision contemplates the prohibition of the sale of intoxicating liquors, and that its purpose or object is not merely to regulate the sale of such liquors. Later on, however, the court fell into an error in respect to what was the object of the legislation, for, after a hasty review of the question, and without citing authorities which can be said to sustain its conclusion, it says: "We conclude that the object and purpose of the act before us is regulation and not prohibition of the liquor traffic."

The court, by its conclusion that the object or purpose of the act is to regulate the sale of liquors, certainly in order to sustain the validity of the act, has been constrained to accord to it a construction not authorized, and one which changes its terms and provisions so as to make it fit its title and thereby bring it into harmony with the requirements of the Constitution. An examination of the statute will disclose that this construction is wholly at variance with its plain terms and provisions. A court is not warranted in broadening or changing by construction the plain terms or provisions of a statute in order to make it fit the object or subject as expressed in its title. 1 Lewis's Sutherland, Stat. Constr. (2d ed.) §120; *In re Paul* (1884), 94 N. Y. 497.

In 1 Lewis's Sutherland, Stat. Constr. (2d ed.) §120, the author says: "The unity and compass of the subject must, therefore, always be considered with reference to both title and purview. The unity must be sought, too, in the ultimate end which the act proposes to accomplish, rather than in the details leading to that end. * * * The title cannot be enlarged by construction when too narrow to cover all the provisions in the enacting part, nor can the purview be contracted by construction to fit the title."

In the case of *In re Paul, supra,* the court said: "Where the title is such that it gives no hint of the real subject of the enactment; where it furnishes no particle of truthful in-

formation; and he who reads it is not bound to know or suspect that the actual enactment does or may exist; and where, as a consequence, the title is misleading and deceptive, it is safe and right to apply the constitutional prohibition. * * * The constitutional provision deals with the law itself as it came from the legislature. We cannot change and narrow its terms to save it. In the room of the subject plainly stated we cannot put one narrower and different in order to get it within the title.''

In considering the act in question it certainly cannot be said to be so ambiguous as to require a court to hunt for its object, for the purpose of the legislature in the enactment thereof is plainly expressed in the body of the law, and therefore the legislature should be held to mean what it has plainly expressed. Consequently, there is no room for construction. In 2 Lewis's Sutherland, Stat. Constr. (2d ed.) §367, in dealing with the question of interpreting statutes the author says: ''When the intention of the legislature is so apparent from the face of a statute that there can be no question as to the meaning, there is no room for construction. It is not allowable to interpret what has no need of interpretation. To attempt to do so would be to exercise judicial [legislative—see *McKay* v. *Fair Haven, etc., R. Co.* (1903), 75 Conn. 608, 54 Atl. 923—Reporter] functions. There is no safer or better settled canon of interpretation than that when language is clear and unambiguous it must be held to mean what it clearly expresses. These views of eminent courts are supported by numerous cases.''

In the case of *State* v. *Sopher* (1901), 157 Ind. 360, 368, the Supreme Court of this State said: ''In construing a statute, or any part thereof, courts are not authorized to disregard the plain language employed by the lawmakers in its enactment. It is the duty of the court to accept the act as written, * * * and where the law is clear upon its face, and when standing alone is fairly susceptible of but one construction, that construction must be given. It has been prop-

erly said by the Supreme Court of the United States that the province of construction lies wholly within the domain of ambiguity. *Hamilton* v. *Rathbone* [1899], 175 U. S. 414-421, 20 Sup. Ct. 155, 44 L. Ed. 219.''

An examination of the senate journal of the special session of 1908, at which session the act in question was passed, discloses that the framer of the bill, which was enacted into the law under consideration, as it was first introduced into the senate, contemplated that if the bill became a law it would secure prohibition of the sale of intoxicating liquors by the method therein provided. And this purpose seems to have been the understanding of the senate in the passage of the bill by that body. It appears that the framer of the title as it originally stood and passed the senate was careful to insert therein the word ''prohibit.'' The senate journal on page twenty-eight shows that the bill was first introduced in the senate by Senator Cox, and when introduced it was entitled: ''A bill for an act entitled 'An act to better regulate, restrict and prohibit the sale of intoxicating liquors and providing for local option elections.' '' Under this title the bill passed the senate. After its passage by that body it appears that on motion of Senator Pearson the title was amended by striking out the word ''prohibit'' and inserting in its place the word ''control,'' and the title as so amended was ordered to stand as the title of the act. Senate Journal p. 67. What necessity arose for amending the title by eliminating therefrom the word ''prohibit'' is not disclosed by the journal.

Guided by the principles to which we have hereinbefore referred, we pass to an examination of the body of this act. An inspection thereof discloses that the terms ''prohibit,'' ''prohibited'' and ''prohibiting'' are employed some fourteen or fifteen times therein, while the terms ''regulate,'' ''restrict'' or ''control'' are not found in the act. We must presume that the legislature fully understood the meaning of the terms ''prohibit,'' ''prohibited'' and ''prohibiting,''

and used them advisedly to express its purpose in enacting the law. The legislature must have intended that, by the method provided, absolute prohibition within the limits of a county might be secured.

At the very introduction of the legislation, by section one of the act, we find it is provided that whenever a petition has been signed, etc., "praying the board of commissioners of any county for the privilege of determining by ballot whether the sale of intoxicating liquors as a beverage shall be prohibited within the limits of such county, such board of commissioners, * * * shall order a special election," etc. By the form of the petition, as provided under section two, the legislature has required the petitioners to state that they petition "that an election be held to determine whether the sale of intoxicating liquors as a beverage shall be prohibited in said county." Section three provides that, in an indictment or information of a prosecution for selling intoxicating liquors as a beverage without a license, it shall not be necessary to set forth the fact that an election was held, and that a majority voted in favor of prohibiting the sale of such liquor, but that it shall be sufficient to allege that the act complained of was "prohibited." By section four the form of each ballot to be used at the special election is required to be as follows:

| YES | "Shall the sale of intoxicating liquors as a |
| NO | beverage be prohibited?" |

This section then declares that "all votes marked with a cross in the square containing the word 'yes' shall be counted in favor of prohibiting the sale of intoxicating liquors as a beverage and all votes marked with a cross in the square containing the word 'no' shall be counted opposed to prohibiting such sales."

In section five, which provides for the board of election

commissioners, it is declared that two resident freeholders of a county, one known to be in favor of prohibiting the sale of intoxicating liquors as a beverage and one opposed to prohibiting such sale, are to be appointed as election commissioners; while section six provides for the appointment by the board of commissioners on the election board of each precinct one judge and one clerk, known to be in favor of prohibiting the sale of intoxicating liquors as a beverage in such county, and one judge and one clerk opposed to prohibiting such sale.

Section seven of the act reads as follows: "The certificate of said election commissioners shall be filed with the auditor of said county not later than five days after said election, and the board of commissioners of said county shall make an order at the next regular session declaring the results and have the same entered of record in the records of said court. If a majority of the legal votes cast at said election shall be in favor of prohibiting the sale of intoxicating liquor as a beverage in such county, it shall thereafter be unlawful for said commissioners or any court to grant a license to any person for the sale of intoxicating liquors in said county, and the board of commissioners thereafter shall have no power or jurisdiction to hear or consider applications for license to sell intoxicating liquors nor to grant such license to any person in such county, until at a subsequent election held under this act a majority of the legal voters of said county voting at such subsequent election shall vote against prohibiting the sale of intoxicating liquors as a beverage."

By section seven, *supra,* it will be observed that the legislature has declared what the result of a majority vote in favor of prohibiting the sale of intoxicating liquors as a beverage in a county shall be. The board of commissioners or any court is prohibited from thereafter granting a license to any person to sell, as a beverage, intoxicating liquors in that county. Not only is the board or a court prohibited

from granting a license, but it will be noted that the legislature has further extended the prohibitive provisions of the act by declaring that the board of commissioners shall have no power even to hear or to consider an application for license to sell intoxicating liquors. The result, then, of a majority vote is absolutely to prohibit for an indefinite time all persons from selling intoxicating liquors as a beverage in the county. The effect of a law must also be considered in determining its nature or character. By §8316 Burns 1908, which is section one of the license law of 1875 (Acts 1875 [s. s.] p. 55), as amended in 1897 (Acts 1897 p. 253, §1), it is declared that "it shall be unlawful for any person, directly or indirectly, to sell, barter or give away, for any purpose of gain, any spirituous, vinous, or malt liquors, without first procuring from the board of commissioners of the county in which such liquor is to be sold, a license as hereinafter provided," etc.

It will therefore be noted that an examination will disclose the fact that under the laws of this State, as they existed at the time of the passage of this local option statute, and as they now are, in the absence of a license granted by the board of commissioners under the license law of 1875, the sale of intoxicating liquors as a beverage to a consumer by anyone in any quantity whatever is absolutely prohibited. Undoubtedly, therefore, the legislature recognized that all that was necessary in order to secure prohibition of the sale of intoxicating liquors as a beverage to a consumer, was to prohibit, as does the act in question, upon the majority vote in favor of prohibition, the granting of a license under the act of 1875, *supra,* to sell such liquors. It is certainly true that in Hamilton county, where this case originated, under the effects of the vote therein cast, the prohibition of the sale of intoxicating liquors as a beverage to a consumer is as absolute and complete for an indefinite time as though the legislature, assuming, for the sake of argument, that it had the power under the Constitution to do so, had singled out

Hamilton county from the other counties of the State, and in a special act, passed for that purpose, had declared by its fiat that the sale of intoxicating liquors as a beverage to a consumer, after the taking effect of the act, should be prohibited in that county under penalties provided by the act for the enforcement of prohibition as therein declared.

Further proceeding with our examination of the statute, and we find that section eight declares that, when an election has been held under the provisions of the act, no subsequent election shall be held until the expiration of at least two years from the time of the preceding election. Consequently, if the prohibition of the sale of intoxicating liquors is once secured in a county by the method of the vote provided by the act, such prohibition continues and controls until another election is held, at which a majority of the legal voters shall vote against prohibiting the sale of intoxicating liquors. This result may or may not happen; it depends upon two uncertain conditions. (1) There must be a petition for another election, which must be signed by the qualified voters of the county, equal in number, to not less than twenty per cent of the aggregate vote cast in such county for Secretary of State of the State of Indiana at the last general election preceding the filing of the petition. (2) A majority of the legal voters of the county must at such subsequent election cast their votes against prohibiting the sale of intoxicating liquors. It will readily be seen that prohibition of the sale of intoxicating liquors once obtained may continue for an indefinite number of years; or, in other words, it must continue, like an act of the legislature, until the authority which put it into force repeals or revokes it. This is unlike a remonstrance under section nine of the Nicholson law as amended (Acts 1905 p. 7, §8332 Burns 1908), which terminates at the expiration of two years. Section nine of the act of 1908, *supra*, declares: "If a majority of the legal votes cast at said election shall be in favor of prohibiting

the sale of intoxicating liquors as a beverage in said county, then after ninety days　*　*　*　all licenses for the sale of intoxicating liquors granted in said county after the passage of this act shall be null and void.''

Section ten declares that ''if a majority of the legal votes cast in any county at an election held under the provisions of this act shall be against prohibiting the sale of intoxicating liquors as a beverage in such county, such vote shall not affect, change or alter the legal effect of any order, judgment, ordinance, remonstrance, or action,'' etc.

If, as the prevailing opinion affirms, the purpose of the statute in question is regulation and not prohibition of the liquor traffic, it is certainly singular that the legislature did not deem it proper to express by some apt terms, words or provisions its purpose to regulate and not prohibit the traffic. Why did that body confine itself, as shown, in framing and passing the law, to the use therein of the terms ''prohibit,'' ''prohibited'' and ''prohibiting,'' to the exclusion of any or all terms which might indicate that the purpose of the legislation was to regulate the sale of intoxicating liquors? Not only does the letter of the act reveal that its purpose is to prohibit the sale of such liquors as a beverage by the means of the majority vote of the legal voters of a county cast in favor of such prohibition, but the very spirit of the law, as disclosed by its provisions, is prohibition and not regulation, and was so understood by the legislature at the time of its passage, and also by its friends and advocates. The prohibitive spirit of the law is more fully revealed by the provisions of section nine. As provided by this section, no right to sell intoxicating liquors as a beverage under a license granted after the passage of the act is recognized. In the event that a majority vote at an election held is cast in favor of prohibiting the sale of such intoxicating liquors, then such license is declared to be null and void, and the holder thereof is placed in the same condition as though he had never been

granted a license. It is true that provision is made that if the license be surrendered within ninety days after the date of the election there will be a refunder of a portion of the license fee.

It is certainly true, as disclosed by the body of the act, that the purpose of the legislature was, under the method provided, to deal with the prohibition of the retail of intoxicating liquors as a beverage by separating the State into units, each of the latter to consist of a county. Evidently by this method its purpose was to make the entire State anti-saloon territory; not *per saltum*, but by steps or stages, or, in other words, attaining that result by an election to be held in each of the counties of the State at which the electors of the county might cast their votes for prohibiting the sale of intoxicating liquors. If, as insisted by counsel for the State, the purpose of the legislature was better to regulate the sale of intoxicating liquors, why did not that body provide in the act that the question to be submitted at the election to be held in a county should be in regard to the regulation of the traffic of intoxicating liquors and not the question as provided by the act: ''Shall the sale of intoxicating liquors as a beverage be prohibited?''

In the majority opinion it is conceded ''that there is a marked difference'' between unqualified prohibition of the sale of intoxicating liquors and the regulation of such sale. It is said in the opinion that ''to regulate, restrict and control the sale implies that the sale shall go on within the bounds of certain prescribed rules, restrictions or limitations.'' Citing *Sweet* v. *City of Wabash* (1872), 41 Ind. 7; *Duckwall* v. *City of New Albany* (1865), 25 Ind. 283; *Loeb* v. *City of Attica* (1882), 82 Ind. 175, 42 Am. Rep. 494.

''Prohibition,'' states the majority opinion, ''as applied to the liquor traffic, implies putting a stop to its sale as a beverage; to end it fully, completely and indefinitely. So, if the purpose of the act in question is to authorize the exercise of unqualified prohibitory power, as usually understood

by the term, the act is void because its subject is not expressed in the title.'' The court might properly have further said that if the act under its provisions is not one to regulate the sale of intoxicating liquors it is void, for the reason that it does not meet or respond to the subject as expressed in its title.

If the meaning accorded by the majority to the term ''prohibition'' as it applies to the liquor traffic is its true meaning, then certainly, as we have shown, such prohibition may be secured under this local option act in every county in the State in which an election is held and a majority vote cast prohibiting the sale of intoxicating liquors as a beverage. The Nicholson law, *supra*, was entitled: ''An act to better regulate and restrict the sale of intoxicating, spirituous, vinous and malt liquors'' etc.

In enacting the local option statute in question the legislature appears to have amended the title of the Nicholson law by adding thereto the word ''control,'' and then adopted it as the title of the act in question.

In the case of *State* v. *Gerhardt* (1896), 145 Ind. 439, 447, 33 L. R. A. 313, the court, in considering the Nicholson law as there involved, said in respect to its title: ''It is obvious, from the language employed in the title of the statute, that the purpose or intent of the legislature in enacting the law was 'to better regulate and restrict the sale of intoxicating liquors.' ''

With this judicial interpretation placed upon the title of the Nicholson law, the legislature, with an immaterial amendment, as shown, adopted it as the title of the local option statute, but in enacting legislation thereunder it wholly departed from the purpose·as expressed in the title, thereby making the latter and the legislation thereunder a complete misfit.

Were it conceded that the act involved was not of a prohibitory character, certainly under its provisions it cannot be said in any sense to contemplate the regulation of the sale

of intoxicating liquors, for such sale in any manner is not authorized or recognized by the act. The very essence of regulation or control is the actual existence of the thing or business which is to be regulated or controlled. 7 Words and Phrases 6044; 24 Am. and Eng. Ency. Law (2d ed.) 243-245; *State* v. *Clarke* (1873), 54 Mo. 17, 34, 14 Am. Rep. 471; *McConvill* v. *Mayor, etc.* (1876), 39 N. J. L. 38, 44.

It would certainly be absurd to speak of one regulating or controlling the gait of a horse by means of a bridle, where there was no horse to be regulated or controlled. It is wholly unreasonable to assert that the retail traffic in intoxicating liquors is to be regulated by a law which under its provisions, upon the majority vote of the electors of a county, does not permit the existence of the traffic within such county.

The court, in its opinion in respect to the act in question, further says: "It is a bundle of provisions, in the enforcement of which every county in the State may retain its saloons and continue the sale of intoxicating liquors as a beverage." We are at a loss to find any warrant for this expression. Certainly there is no room for asserting that under the enforcement of the provisions of this law every county may retain its saloons. It would be more reasonable and more in harmony with the statute to say that under its provisions it is possible for every county to exclude its' saloons and thereby become anti-saloon territory. There are no provisions therein authorizing the continuance of the sale of intoxicating liquors, for the very foundation upon which the act rests is: Shall the sale of intoxicating liquors as a beverage be prohibited? If this question is answered in the affirmative by a majority of the electors, the county becomes anti-saloon territory, and the sale of intoxicating liquors therein as a beverage is thereafter prohibited. Had the act been entitled: "To prohibit the sale of intoxicating liquors," or had it been enacted under the comprehensive title of: "An

act concerning intoxicating liquors," then we would have quite a different question with which to deal in respect to the title. *State* v. *Young* (1874), 47 Ind. 150.

In the prevailing opinion, the court, in support of its holding that the subject of the legislation is expressed in the title, relies upon the decision in the case of *State* v. *Gerhardt, supra,* wherein it was held that the title of the Nicholson law expressed the subject of the legislation thereunder. But said case, in view of the provisions of the statute there involved, can lend no support to the holding of the majority of the court. The Nicholson law professed to be and was regulative in respect to the granting of a license under the act of 1875, and also regulated the sale of intoxicating liquors under a license granted to an applicant. That law was, as its title declared, "An act to better regulate and restrict the sale of intoxicating liquors." It not only regulated the granting of a license to retail such liquors, but also regulated the business of selling such liquors under the license and the place or building wherein the business was conducted.

By Section nine of that act (Acts 1895 p. 248, §7283i Burns 1901) the right to remonstrate against the granting of a license to some particular applicant, without stating any cause for remonstrance, and thereby defeating the granting of a license to him, was accorded to a majority of the legal voters of a township or city ward. In construing §7283i, *supra,* in the case of *State* v. *Gerhardt, supra,* it was held that it merely provided a condition, which if the board of commissioners upon hearing an application for license found to exist, then the power of the board over the matter of the particular application was terminated, and it could proceed no further in the hearing.

It was properly held in that case that §7283i, *supra,* was not enacted with a view to prohibiting the sale of intoxicating liquors, but only as a restriction to the granting of a license, thereby restricting the traffic in such liquors.

Section 7283i, *supra,* contains matter properly connected

with the title, "to better regulate and restrict the sale of intoxicating liquors," and as a part of that regulative statute it was a matter of detail by which the traffic could be more fully regulated or restricted.

There is a marked difference between the provisions of the Nicholson law as an entirety and the provisions of our local option statute. It may be conceded that an act of the legislature which in the main regulates the sale of intoxicating liquors may be upheld under a title to regulate such liquors, although it contains prohibitive features or provisions for carrying out the regulation provided. If the act in question were of such a character, it might be upheld under its title. But upon no view, in our opinion, can the subject of the legislation embraced within the body of this act be said to apply to the subject as expressed in its title. That the law in question can in no sense be said to be supplemental to the license law of 1875, *supra,* and regulative of the granting of a license thereunder for the sale of intoxicating liquors authorized by such license, is so obvious that no argument is necessary in support of this assertion.

Of course it may be said that a law to regulate the sale of intoxicating liquors by means of a license may, to an extent, be prohibitory. That is to say, that, under some of its provisions, the selling of intoxicating liquors to minors, to habitual drunkards, on Sunday, on certain other days, and between certain hours, is prohibited, but such prohibition is but temporary and restrictive, and is a matter properly connected with the subject of regulation, and merely operates to carry out the regulation of the traffic. The prohibition of such sales is but a partial restriction of the sales of liquor, and in a strict sense affords only regulation and not absolute prohibition.

It is evident that the title of this act, when considered in the light of the legislation enacted thereunder, is deceptive, misleading and delusive, and therefore comes fully within

the mischief intended to be prevented by article 4, §19, of the Constitution. *Hingle* v. *State* (1865), 24 Ind. 28. Therefore, as affirmed in the case of *In re Paul* (1884), 94 N. Y. 497, the only safe rule which should be enforced is to apply to this title the constitutional prohibition, and condemn it, for the reason that it does not express the subject of the legislation. It never has been claimed, so far as we are aware, that the subject of the local option laws, as passed in many of our sister states, was to regulate the traffic of intoxicating liquors instead of the prohibition of such traffic, and an examination of these statutes will show that the subject, as expressed in their titles, is prohibition of the sale of such liquors, and not the regulation thereof. We refer to the titles of some of these acts: The local option statute enacted in Dakota was entitled: "An act to prohibit the sale of intoxicating liquors by local option." North Carolina: "An act to prohibit the sale of spirituous liquors in certain localities." In Washington Territory: "An act to prohibit the sale of intoxicating liquor in the several election precincts of Washington territory, whenever a majority of the legal voters of any such precinct, at an election to be held for that purpose, shall vote in favor of the prohibition of the sale of such liquors in their respective precincts." Others might be referred to, but these will suffice.

That a title, "To better regulate, restrict and control the sale of intoxicating liquors," contemplates the regulation of such sales, and does not empower the legislature to enact thereunder legislation, which in its entirety is to prohibit the sale of such liquors as a beverage, as does the act in question, is fully supported by the following authorities: *Mewherter* v. *Price* (1858), 11 Ind. 199; *Duckwall* v. *City of New Albany, supra; Sweet* v. *City of Wabash, supra; State* v. *Young, supra; Loeb* v. *City of Attica, supra; Shea* v. *City of Muncie* (1897), 148 Ind. 14, 26; *City of Elkhart* v. *Lipschitz* (1905), 164 Ind. 671; *Crabb* v. *State* (1891), 88 Ga.

584; *In re Hauck* (1888), 70 Mich. 396, 38 N. W. 269; *State* v. *Mott* (1884), 61 Md. 297, 48 Am. Rep. 105; *City of Emporia* v. *Volmer* (1874), 12 Kan. 622; *McConvill* v. *Mayor, etc.* (1876), 39 N. J. L. 38; *Miller* v. *Jones* (1885), 80 Ala. 89; *Morgan* v. *State* (1886), 81 Ala. 72, 1 South. 472; *Yahn* v. *Merritt* (1897), 117 Ala. 485, 23 South. 71; *Bronson* v. *Oberlin* (1885), 41 Ohio St. 476, 482, 52 Am. Rep. 90; *Town of Cantril* v. *Sainer* (1882), 59 Iowa 26, 12 N. W. 753; *People* v. *Gadway* (1886), 61 Mich. 285, 290, 28 N. W. 101, 1 Am. St. 578; *State, ex rel.,* v. *Town Council, etc.* (1852), 6 Rich. (S. C.) 404; *Gerding* v. *Board, etc.* (1907), 18 Idaho 444, 90 Pac. 357; *State, ex rel.,* v. *Judge, etc.* (1888), 50 N. J. L. 585, 15 Atl. 272, 1 L. R. A. 86; *State* v. *Fay* (1882), 44 N. J. L. 474.

In order to keep our opinion within the proper limits, we can refer only to a few of the cases before cited. Taking three cases from our own State first, we find that in the case of *Duckwall* v. *City of New Albany, supra,* it was held that the power "to regulate ferries," conferred upon the common council of a city, did not invest the council with authority to prohibit, without a license first obtained from the city.

In the case of *Sweet* v. *City of Wabash, supra,* the court said: "Neither the power 'to exact license money' nor that 'to regulate' confers the power to prohibit the sale of intoxicating liquors either by retail, or where the liquor is to be drank on the premises."

In the case of *City of Elkhart* v. *Lipschitz, supra,* the court held that the power granted by the legislature to cities to regulate slaughter-houses, did not authorize the prohibition or exclusion of such houses from the territory over which the common council had jurisdiction.

In the case of *Crabb* v. *State, supra,* the court held an act to be unconstitutional which was entitled, "To regulate the sale of spirituous   *   *   *   liquors in the county of Polk," and the body of the act was prohibition and not regulation.

In the case of *State* v. *Mott, supra,* the court held that a power simply to regulate did not embrace the power to prohibit the trade or occupation.

In the case of *McConvill* v. *Mayor, etc., supra,* it was said that the terms "regulate" and "control" did not necessarily or properly imply prohibition.

In the case of *Miller* v. *Jones, supra,* the court said: "Regulate and prohibit have different and distinct meanings, whether understood in their ordinary and common signification, or as defined by the courts in construing statutes. Power granted to a municipal corporation to grant licenses to retailers of liquors, and to regulate them, does not confer power to prohibit, either directly or by a prohibitory charge for a license."

In the case of *Bronson* v. *Oberlin, supra,* the supreme court of Ohio, in considering a law in regard to the sale of intoxicating liquors, said: "The title of the law under consideration is 'An act authorizing certain incorporated villages to regulate the sale of intoxicating liquors therein.' Considering the words of this act, together with its title, we conclude that the power conferred was to regulate the sale of intoxicating liquors, * * * but not to prohibit."

In the case of *Town of Cantril* v. *Sainer, supra,* the question presented was in regard to the title of a town ordinance. The statute of Iowa provided that "no ordinance shall contain more than one subject, which shall be clearly expressed in its title." The title of the ordinance there involved was, "Regulating the use and sale of intoxicating liquors." The subject of the legislation, as found in the body of the ordinance there in question, was entirely prohibitory. The court said: "There is no pretense at regulation. Its whole scope is an absolute prohibition of the sale of any and all kinds of liquors. * * * Instead of the title of this ordinance being a clear statement of its subject, it is wholly inconsistent with it, and states a wholly different subject—as different as regulation is from prohibition."

In the case of *State* v. *Fay, supra,* the court in considering the terms "regulation" and "prohibition," in respect to the sale of intoxicating liquors, said: "Intrinsically, regulation and prohibition range in different spheres. No sale which is prohibited is regulated and none regulated is prohibited."

In the State of Michigan a law was enacted in 1887 which was entitled: "An act to regulate the manufacture and sale of malt, brewed or fermented, spirituous and vinous liquors in the several counties in this state." The constitution of that state provides that "no law shall embrace more than one object, which shall be expressed in its title."

In the case of *In re Hauck* (1888), 70 Mich. 396, 38 N. W. 269, this law came before the supreme court. One objection, among others, urged against its validity was that it was entitled, "An act to regulate the manufacture and sale" of certain liquors, while its object, as disclosed by the body thereof, was to prohibit such manufacture and sale in counties where a majority of the electors voting at an election voted against such manufacture and sale. The court sustained this objection, and held that the object of the law was to prohibit the sale of all kinds of liquors therein mentioned as a beverage in the counties where a majority of the voters should vote for prohibition. This the court held was not expressed by the title of the act. The court in reviewing the various sections of the act in question, in order to determine whether the law provided for regulating the manufacture and sale of intoxicating liquors and therefore fit its title, said: "It is apparent that the object of the act is to prohibit the manufacture and sale of liquors to be used as a beverage. There is no attempt by the legislature to disguise this object in the body of the act. In section one they say that the electors who are in favor of prohibiting the manufacture and sale of intoxicating liquors for use as a beverage shall vote against, and those who are opposed to prohibition shall vote for, the manufacture and sale of such liquors. Section two makes the object still more plain by declaring it un-

lawful to manufacture or sell liquors in any county in which a majority of the votes cast upon the question of prohibiting the sale of intoxicating liquors was against the manufacture and sale. And because it is prohibited, section three suspends the general laws taxing or regulating the sale of liquors as a beverage in any county in which the electors have voted to prohibit the manufacture and sale of such liquors by a majority vote. It is too plain for argument that the object of this act was to prohibit the sale of fermented, vinous, spirituous and intoxicating liquors as a beverage in such counties as the majority of the electors should vote for prohibition.''

The case of *State, ex rel.,* v. *Judge, etc., supra,* is cited and relied upon by the State in support of the title of the act here involved. The law involved in said case was entitled: ''An act to regulate the sale of intoxicating and brewed liquors.'' This law appears to have consisted of two parts. The first part authorized the granting of what was known as a ''high license'' for the sale of intoxicating liquors. It provided for and fixed the license fee for such license, and regulated the sale of liquors under the license. The second part of the act provided for and authorized a vote in each county, in order that the legal voters thereof might determine whether any intoxicating or brewed liquors should be sold within the county. The case involved the validity of the local option provisions of this statute. The contention there was that the object of this latter portion of the act was, in effect, to prohibit the sale of intoxicating liquors, and therefore was not expressed in the title to regulate such sale.

The court referred to the case of *In re Hauck, supra,* and said that that case was well decided, but held that if the law which it had under review could be said to prohibit the entire traffic of intoxicating liquors, in the event of an adverse vote, it violated the constitution of that state, because the object of the act was not expressed in its title, as required by the constitution. The holding of the court was that as

the act was in part regulative and provided for a license for the sale of liquors, the majority vote cast against the sale of liquors under the license operated to attach a condition to the license feature of the law, and thereby prevented the granting of a license to any person to keep in the county an inn, tavern or saloon wherein intoxicating liquors were sold. The question presented in this latter case was quite similar to the one presented by section nine of the Nicholson law (§7283i, *supra*), and decided in the case of *State* v. *Gerhardt, supra.*

It is apparent from the reasoning of the court in the case of *State, ex rel.,* v. *Judge, etc., supra,* that had not the law as there involved been to regulate the traffic of intoxicating liquors in part, and only to prohibit in part, the sale of such liquors as a beverage, the court would have held the local option provisions thereof, standing alone, invalid, for the reason that the object of these latter provisions was not properly expressed in the title to regulate, etc.

It is too plain for argument that the subject of the legislation here involved is to prohibit the sale of intoxicating liquors as a beverage in each county of this State where a majority of the voters therein, at a special election held as provided, shall vote to prohibit such sale as a beverage, and as this subject is not expressed in the title, the act, for this reason alone, must be held to violate the Constitution and is therefore invalid.

We pass to a consideration of the second point urged against the constitutional validity of this statute, namely that it violates article 1, §26, of the state Constitution, because it permits the electors of a county to suspend therein the operation of the license law of 1875, *supra,* a law which is wholly independent of the act in question.

In answer to this contention, as advanced by counsel for appellant, the majority opinion virtually concedes that the license law of 1875, *supra,* is suspended, but attempts to meet the proposition by affirming that such suspension is not the

result of a majority vote of the electors of a county cast in favor of prohibiting the sale of intoxicating liquors, but, on the contrary, it is the legislative decree which suspends the latter act.

In the case of *Garner* v. *State* (1848), 8 Blackf. 568, a local act of the legislature passed in 1846 was involved. That statute applied alone to Marion county. It required the commissioners of that county to withhold a license to retail intoxicating liquors from all persons in any township of said county in which a majority of the voters at the April election in 1846 should not cast their ballots in favor of such license. The court in the course of its opinion in that case said: "The act, then, does not prohibit the obtaining a license to retail. It authorizes a vote to be taken, the result of which may or may not prevent the obtainment of a license, but it is the vote under the law and not the law itself that produces, in the given case, the effect; for were the vote different, the license might, notwithstanding the law, be obtained."

This decision is quite applicable to the question of the suspension of the act of 1875, *supra,* as involved in this appeal. It certainly contravenes the holding of the majority, that it is the legislative decree and not the vote of the electors which results in the suspension of the operation of the license statute.

In the case of *Cain* v. *Allen* (1907), 168 Ind. 8, the insistence was that the act of 1905 (Acts 1905 p. 7, §8332 Burns 1908), which amended section nine of the Nicholson law so as to authorize a "blanket" remonstrance against all applicants for a license, permitted the voters of a township or city ward to suspend the operation of the statute of 1875. In meeting this contention the court in that case said: "It is an undisputed proposition that under our fundamental law it is not within the power of the legislature to confer upon the citizens of the State the right to say whether the

Vol. 174—7

operation of an existing statute or law shall be suspended. It will be noted that the statute in question does not declare that the filing of a general remonstrance as therein provided shall thereafter render it unlawful for any person to apply to the board of commissioners for a license, but it is only declared to be unlawful thereafter for that tribunal to grant a license to any applicant therefor, etc. The act presupposes, or rather recognizes, the right of persons thereafter to apply for a license to retail intoxicating liquors under the provisions of the act of 1875. A person, then, still having the right to apply to the board for a license, certainly, as incidental thereto, must be accorded the right to a hearing upon all of the questions necessarily arising in the proceeding instituted by his application.''

It was held in the latter case that the remonstrance authorized by the statute under review was drawn into every case for the application of a license, and that the right to a hearing upon such a remonstrance was accorded to each applicant for a license. The query arises, Does the law in question—this local option statute—by the plain terms deny the right of a person to apply to the board of commissioners for a license, under the law of 1875, in a county in which the majority of the electors has voted in favor of prohibiting the sale of intoxicating liquors?

Turning to the provisions of section seven of the act in question (Acts 1908 [s. s.] p. 4), to ascertain if they are in harmony with the decision in the case of *Cain* v. *Allen, supra,* we find that in this section the legislature has in most positive terms declared that upon the filing of the certificate of the election commissioners with the auditor of the county the board of commissioners shall make an order declaring the result, and have the certificate in question entered upon the records of such board.

It is further declared that if a majority of the legal votes cast at such election—of course meaning as shown by the certificate of election commissioners—shall be in favor of

prohibiting the sale of intoxicating liquors as a beverage in such county, then it shall be unlawful for the board of commissioners or for any court to grant a license to any person for the sale of intoxicating liquors in the county in which the majority vote has prohibited such sale. But not satisfied with said declaration, the legislature has further declared in this section that if the majority vote be in favor of prohibiting the sale of intoxicating liquors in the county, the board of commissioners thereafter "shall have no power or jurisdiction to hear or consider applications for license to sell intoxicating liquors," until at a subsequent election held under the act the majority of the legal voters of the county voting at such election shall vote against prohibiting the sale of such liquors as a beverage.

This latter provision of the section is not open to construction, but must be interpreted as written. In regard to it the maxim *"ita lex scripta est"* is applicable.

The board of commissioners is stripped of all power even to hear or to consider an application for a license, and it follows, as a logical conclusion, that no person has any right to apply to the board for a license to sell intoxicating liquors, the right accorded to him by the license law of 1875, *supra*. Certainly if the board is prohibited from hearing or considering an application, no one would be expected to do the useless thing of presenting to the board of commissioners an application for a license. It follows that in Hamilton county and all other counties, which under the act have voted to prohibit the sale of intoxicating liquors, as the direct effect and result of such vote of the electors, the operation of the law of 1875, *supra*, is suspended, and such suspension will continue until at a subsequent election, which may or may not be held, a majority of the votes cast shall be against prohibiting the sale of intoxicating liquors.

This provision of section seven is clearly and unmistakably antagonistic to the holding of the court in the case of *Cain* v. *Allen*, *supra*. In that case, as shown by the quota-

tion hereinbefore set out, the court held that the filing of a general remonstrance, as authorized by the Moore amendment to section nine of the Nicholson law, against the traffic of intoxicating liquors, did not result in rendering it unlawful for any one thereafter to apply to the board of commissioners for a license and to have a hearing of his application by that tribunal, but only made it unlawful for the board thereafter to grant a license to any applicant, and thereby the bringing of the provisions of the act in conflict with article 1, §26, of the Constitution was avoided.

As previously shown, the question, among others, in the case of Cain v. Allen, supra, was, Did the act there involved permit the suspension of the license statute of 1875 by reason of the expression against the traffic of intoxicating liquors by the majority of the electors of a township or city ward? But, notwithstanding the construction accorded by the court in that case to the statute there involved, the legislature, in the very teeth of that decision, has, by the provisions of section seven of the act in controversy, permitted the legal voters of a county to suspend the operation of the act of 1875, which grants to an applicant for a license the right to have his application heard and considered by the board of commissioners. Cain v. Allen, supra.

There is no room, under the statute in question, for the claim made by counsel for the State, in order to bring this case within the decisions in the cases of State v. Gerhardt, supra, and Cain v. Allen, supra, that each applicant for a license is entitled to a judicial hearing upon the question as to whether a majority of the legal votes cast at the election was in favor of prohibiting the sale of intoxicating liquors as a beverage. Counsel say that "If the finding upon this issue shall be in favor of the applicant, the board may then proceed to hear and try his application. And if the finding be against him in such issue, the board has no jurisdiction, but must dismiss the application." There is no ground whatever for such a construction of the statute.

. In the case of *State, ex rel.,* v. *Smith* (1890) 26 Fla. 427, 7 South. 848, it was held that the general license law of Florida was suspended by the prohibitive local option law when the latter law was put in operation by a majority vote of the electors. The court in that case, in the course of its opinion, said: "When this local option article is put in operation in any county or election district by a majority vote, it suspends during the period of its operation, or until there shall be another election changing the status, all statutes regulating the sale of such liquors, wines or beer, in the county or district."

In the case of *Young* v. *Commonwealth* (1878), 77 Ky. 161, the court, in considering the local option statute of that state, said: "We are of the opinion that in localities where the people have voted against the sale of liquors the act becomes operative as a whole and suspends *pro tanto* all inconsistent laws."

In Cooley, Const. Lim. (7th ed.) 558, the author says: "The legislature may suspend the operation of the general laws of the state; but when it does so the suspension must be general, and cannot be made for individual cases or for particular localities."

Generally speaking, this principle, as declared by Judge Cooley, may be said to be applicable to suspension of the operation of laws in this State under our Constitution.

By reading the provisions of section seven, *supra,* it must be obvious to any one that by the effect of the vote cast in Hamilton county the operation of the license law of 1875 has been suspended, or, figuratively speaking, it may be said that this act has been completely put to sleep in that county, and will indefinitely continue in this condition. Possibly it may subsequently be awakened or restored to its former operation by the effects of a majority vote of the electors of that county against the prohibition of the sale of intoxicating liquors. That the license law is suspended in Hamilton county may be easily discovered upon an application by

some person entitled to a license thereunder to retail liquors in that county, made to its board of commissioners for a license to retail intoxicating liquors. He would no doubt be informed by the board that he was completely barred from making or having any such application considered, by reason of the vote of the county, as shown by the election certificate.

It is certainly evident that under the act the board of commissioners, in each county of this State in which a majority vote has been cast for the prohibition of the sale of intoxicating liquors as a beverage, as a result of such vote under the statute in question, has been completely stripped of all its judicial functions relative to the granting of a license to sell such liquors. In fact it cannot be said that the board of commissioners in such counties has any duty to perform in respect to the granting of a license. All the power accorded it is merely to refuse to consider an application for a license.

This point, as presented and argued by counsel for appellant, the majority of the court apparently has not considered. In refusing to consider an application for license, the board is vested with no discretion whatever. When a county has voted for prohibition of the sale of liquors, the only duty remaining for the board of commissioners to discharge is one which is purely ministerial, which is to examine the certificate of the election commissioners, have such certificate entered of record, and declare the result of the election as disclosed by such certificate.

A local option act of the State of Oregon was before the supreme court of that state in two appeals. See *State* v. *Malheur County Court* (1905), 46 Ore. 519, 81 Pac. 368, and *State, ex rel.,* v. *Richardson* (1906), 48 Ore. 309, 85 Pac. 225, 8 L. R. A. (N. S.) 362. In the first case cited the court, in considering the questions presented in respect to this statute, held that when "it is shown that the majority of the vote is for prohibition, the county court has but one duty to perform, and that is to make the order prohibiting the sale of

intoxicating liquors within the district involved.'' Continu-
ing the court further said: ''These special duties are plainly
prescribed, which are to be performed not upon any discre-
tion vested in the court, but upon the exigency of certain
conditions that are left to the electors of the district involved
to bring about. When the conditions exist, the duties follow
without more, and are to be discharged in a purely ministe-
rial capacity, to carry out the purposes of the act.''

In the case of *State, ex rel.,* v. *Richardson, supra,* the same
local option act appears to have been involved. In that case
the court said: ''The section of the act thus challenged re-
quires the county court, if a majority of the votes cast in an
entire county, or in any subdivision thereof as a whole, or
in any precinct at an election called for that purpose, be in
favor of prohibition, to make an order declaring the result
of such vote and absolutely prohibiting the sale of intoxicat-
ing liquors as a beverage within the prescribed limits. It
will be observed that this section makes the declaration of
the result of a majority vote for prohibition and the inter-
diction of the sale of intoxicating liquors as a beverage in
pursuance thereof, by the county court, a ministerial act.''

It is unreasonable to insist, as do counsel for the State,
that an applicant for a license may contest before the board
the result of the special election, and have that question de-
termined by the board of commissioners in an application
which he may make for a license. In the first place, as we
have herein shown, the board, under the act in question, is
prohibited from hearing or considering an application for
license. Certainly there is no room for asserting that under
the statute such applicant is invested with the right to con-
test the election. There is no statutory authority conferred
upon the board of commissioners by which it is empowered
to hear and determine a question of contest of the election if
presented by an applicant for license. The result of the
election, as shown by the certificate of the election commis-
sioners, so far as the board is concerned, is conclusive, and

such certificate is not open to a collateral attack made by an applicant for a license.

In the conclusion which we reach in this case in respect to the validity of the act herein, we are not to be understood as denying the power of the legislature to enact a law under a title which expresses the subject of the legislation, and along proper and well-recognized lines by which the legal voters of a city ward, township or county may be authorized to determine by their ballots cast at an election, either general or special, whether the sale of intoxicating liquors as a beverage shall be prohibited.

Without further review, we believe that we are justified, for the reasons herein stated, in concluding, as we do, that the act in question is unconstitutional and therefore invalid for the reasons that the subject thereof is not expressed in its title, and that it violates article 1, §26, of the state Constitution.

The judgment below should be reversed.